**NORTH BRANCH RESOURCES, L.L.C., Plaintiff,**

v.

**M/V MSC CALI et al., Defendants.**

**No. 00 CIV. 3054(JSR).**

United States District Court, S.D. New York.

July 30, 2001.

*MEMORANDUM ORDER*

RAKOFF, District Judge.

Defendant Cox Dedicated Corporate Member Ltd. ("Cox") has moved the Court, pursuant to Fed.R.Civ.P. 60(b), for reconsideration of the March 1, 2001 Memorandum Order granting summary judgment in favor of plaintiff North Branch Resources, L.L.C. ("North Branch"). *See North Branch Res., L.L.C. v. M/V MSC CALI*, 132 F.Supp.2d 293 (S.D.N.Y.2001), full familiarity with which is here assumed.

In granting summary judgment to plaintiff, the Court held, *inter alia,* that damage to both the "five-container shipment" and the "nine-container shipment" took place within the coverage period specified by ¶ 8.1 of the London Institute Cargo Clauses (A) incorporated by reference into the insurance policy. Cox claims that the Court mistakenly treated ¶ 8.1 as an "exclusion" rather than a "coverage" term and therefore mistakenly placed on Cox (the insurer) the burden of proving exclusion, rather than placing on North Branch (the insured) the burden of proving coverage. It is Cox, however, that is mistaken, because the relevant portion of the Court's Memorandum Order dealing with this issue is silent on burden of proof and is in no way premised upon who has that burden; and while the relevant portion of the Memorandum Order does use words like "exclude," it does so in terms of their ordinary English meaning and not in terms of the distinction between an exclusionary clause and a coverage clause.

▪ Indeed, even in its instant motion, Cox does not challenge that ¶ 8.1, no matter how construed, extends coverage to the nine-container shipment. It argues, however, that the "plain meaning" of ¶ 8.1 does not extend coverage to the five-container shipment, because it terminates such coverage "60 days after completion of discharge overside of the goods hereby insured from the overseas vessel at the final port of discharge," an act that Cox argues was accomplished when Venezuelan Customs initially took custody of the containers on April 18, 1999, more than sixty days before the damage was discovered. This argument, which Cox also made, and the Court likewise considered, at the time of the original summary judgment hearing, was rejected by the Court because one of the five containers was wrongly reloaded and Customs then held the other four in limbo until the fifth container came back and was unloaded on September 21, 1999, i.e., fewer than sixty days before the shipper discovered the loss. The Court therefore concluded that the discharge had not really been completed until September 21, 1999.

▪ To be sure, this conclusion involved construing ¶ 8.1 favorably to North Branch and unfavorably to Cox. But such construction was not, as Cox supposes, a function of burden of proof, but rather of independent principles, in particular, the principle that insurance contracts should be construed against the insurer. This principle derives, ultimately, from the more general principle that a contract should be construed against its drafter; but it takes on particular importance with respect to insurance contracts, many of whose provisions are industry-wide boilerplate not realistically subject to negotiation by an individual insured. Such clauses must be read against the insurer, regardless of whether the clause is a "coverage" clause or an "exclusionary" clause, because to do otherwise would enable the insurer to take advantage of the very uncertainties it created.

This being the law, not just of New York, but of England (whose law governs the contract here at issue), *see Zeus Tradi-*

*tion Marine Ltd. v. Bell,* [2000] 2 Lloyd's Rep. 587, 597 (Eng.C.A.), the Court sees no reason to depart from its earlier determination regarding liability.[1]

■ As to damages, however, Cox is quite correct in calling the Court's attention to the fact that North Branch, in its summary judgment motion, only sought summary judgment on liability and requested the Court to refer the matter to a Magistrate Judge for determination of the amount of damages. The Court therefore erred in entering final judgment as to damages.

Accordingly, Cox's motion for reconsideration is hereby denied in part and granted in part. Specifically, the summary judgment as to Cox's legal liability is hereby confirmed, but the Clerk of the Court is directed to vacate the final judgment previously entered and to refer the issue of damages to Magistrate Judge Dolinger for prompt inquest.

SO ORDERED.

1. In so ruling, the Court has also considered the other arguments as to liability raised in Cox's instant motion and finds them without merit. For example, Cox contends that with respect to the five-container shipment, the Court incorrectly inferred that Cox had conceded that oral notice was timely given. Even if, as Cox claims, no such concession was made, the result would not change, since the purpose of the notice provision here was to permit prompt inspection and, as Cox unquestionably concedes, *see* Def.'s R. 56.1 Statement ¶¶ 15, 16, the goods were inspected by an independent surveyor immediately after the damage was discovered. As with the nine-container shipment, then, the minimal consequences of the delay would still, under English law, not be sufficient to bar plaintiff's claim, *see* 132 F.Supp.2d at 297.